UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LIBERTY FORD LINCOLN MERCURY, INC., *et al.*, | Case No. 1:21-cv-02085 |
| Plaintiffs, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jonathan D. Greenberg |
| FORD MOTOR COMPANY, | |
| Defendant. | |

## OPINION AND ORDER

In their second amended complaint, Plaintiffs, six Northeast Ohio Ford dealerships, bring various claims against Defendant Ford Motor Company, challenging its allocation of vehicles among dealers and various other practices in the parties' business relationship. Plaintiffs move for a partial summary judgment, arguing that Ohio law obligates Ford to disclose certain information about its distribution of vehicles, and seek a declaratory judgment and mandatory injunction. ([ECF No. 37](#).) Interpretation of the statute at issue presents a question of first impression. The Court held oral argument on the motion on November 15, 2022 and took the motion under advisement. For the following reasons, the Court **DENIES** Plaintiffs' motion.

## STATEMENT OF FACTS

At this stage of the proceedings, the record establishes the following facts, which the Court construes in the light most favorable to Defendant as the non-movant.

### A. Undisputed and Relevant Facts

Defendant Ford Motor Company manufactures new motor vehicles and distributes them through franchisees because Ohio law prohibits direct-to-consumer sales. (ECF No. 29, ¶¶ 22–24 & 32, PageID #414–15; ECF No. 30, ¶¶ 22–24 & 32, PageID #451–52.) Plaintiffs are six new motor vehicle dealer franchisees that operate throughout Ohio and sell vehicles that Ford manufactures. (ECF No. 29, ¶¶ 18–19 & 31, PageID #413–14; ECF No. 30, ¶¶ 18–19 & 31, PageID #451–52.) "The term 'line make' generally refers to motor vehicles of the same brand or manufacturer's trademark." (ECF No. 29, ¶ 29, PageID #414; ECF No. 30, ¶ 29, PageID #452.) Plaintiffs operate within Ford's Pittsburgh region for distribution and allocation of new motor vehicles. (ECF No. 29, ¶ 32, PageID #415; ECF No. 30, ¶ 32, PageID #452.)

#### A.1. Ford's Distribution Process

Ford determines the number of new vehicles each dealer receives in three stages. On a periodic basis, usually monthly, Ford makes an initial wholesale allocation. (ECF No. 29, ¶ 79, PageID #422; ECF No. 30, ¶ 79, PageID #456.) This initial wholesale allocation includes vehicles a dealer earns through Ford's allocation formula. (ECF No. 29, ¶ 80, PageID #422; ECF No. 30, ¶ 80, PageID #456.) At this stage, the dealer-franchisee chooses to accept or decline the vehicles that Ford offers. (*Id.*) Because Ford's allocation formula accounts for a dealer's sales history, as one

2

variable, a dealer's decision to decline vehicles might adversely affect its future allocation. (ECF No. 30, ¶ 85, PageID #457.) Beyond the vehicles distributed in the initial wholesale allocation, dealers may request additional vehicles. (ECF No. 29, ¶ 86, PageID #423; ECF No. 30, ¶ 86, PageID #457.)

Before this initial allocation, Ford's Pittsburgh region may withhold a portion of its allocation and offer these vehicles on a discretionary basis in addition to the allocation determined according to the formula. (ECF No. 30, ¶¶ 94–98, PageID #457–58.) This holdback may include initial product offers. (ECF No. 29, ¶¶ 100–01, PageID #426; ECF No. 30, ¶¶ 99–110, PageID #458.)

Finally, after the initial wholesale allocation, but before the next allocation period, Ford offers additional new motor vehicles to dealers. (ECF No. 35-1, PageID #485.) These vehicles come from unanticipated production or vehicles originally offered to other dealers that were declined. (*Id.*) Ford offers these vehicles to dealers on a discretionary basis. (*Id.*)

### A.2. Plaintiffs' Request for Allocation Information

On September 17 and November 30, 2020, citing Ohio law, Plaintiffs "requested a complete breakdown by model, color, and equipment of the allocations for each wholesale in 2020, for each dealership in the [Northeast Ohio] region, including how the allocations were derived, as applied to any mathematical formula or system for allocation." (*Id.*, PageID #505.) Ford did not provide this information. (*Id.*, PageID #506.)

3

B.     **Plaintiffs' Interpretation of the Record**

Plaintiffs argue that Ford has "admitted dispositive facts which render Counts 1 and 2" of their complaint "ripe for adjudication in [their] favor." (ECF No. 37, PageID #515.)   Ford disagrees and accuses Plaintiffs of mischaracterizing its positions, admissions in the pleadings, and discovery responses.  (*See* ECF No. 39, PageID #543–44.)  Ford has the better of this argument.

Plaintiffs argue that Ford admits that (1) the operative provision of Ohio law (Section 4517.59(A)(14) of the Ohio Revised Code) "says exactly as Plaintiffs suggest," and (2) "it has not complied with the plain language of the statute" by refusing to disclose the information that Plaintiffs twice requested.   (ECF No. 37, PageID #515–16.)  In Plaintiffs' view, Ford has admitted that the statute mandates the relief it requests, entitling them to judgment in their favor.  (*Id.*)  Construed in the light most favorable to Defendant as the non-movant, the record tells a different story.

To start, Ford does not admit that the statute has the interpretation Plaintiffs offer.  As support for that proposition, Plaintiffs cite Defendant's answer to three paragraphs of the second amended complaint.  (*Id.*, PageID #520 & #525.) They allege and Ford answers as follows:

- Paragraph 46:  "R.C. 4517.59(A)(14), quoted in full above, requires Defendant Ford to disclose its system of allocation, by which Ford allocates, among new motor vehicle dealers, vehicles of the line-make that Plaintiffs handle, to Plaintiffs upon Plaintiffs' request for that information." (ECF No. 29, ¶ 46, PageID #417.)

4

>   Answer: "Ford states that the allegations in paragraph 46 state a legal conclusion for which no response is required, but to the extent that a response is required Ford admits the allegations contained in paragraph 46." (ECF No. 30, ¶ 46, PageID #454.)

- Paragraph 47: "By express statutory mandate, the disclosure mandated by R.C. 4517.59(A)(14) must 'include[e] [sic], but not [be] limited to, a complete breakdown by model, color, equipment, other items or terms, and a concise listing of dealerships with an explanation of the derivation of the allocation system including its mathematical formula in a clear and comprehensible form.' R.C. 4517.59(A)(14)." (ECF No. 29, ¶ 47, PageID #417.)

>   Answer: "Because paragraph 47 purports to partially quote a statute, Ford refers to that statute as the best evidence of its contents and denies any characterization of it that conflicts with the contents of the statute and any allegations against Ford that may be contained in paragraph 47." (ECF No. 30, ¶ 47, PageID #454.)

- Paragraph 49: "Ohio law expressly forbids a franchisor, such as Defendant Ford, from refusing or otherwise failing to make the disclosures required by R.C. 4517.59(A)(14). R.C. 4517.64(A)(2) ('No franchisor shall . . . [f]ail to perform a duty imposed upon it by sections 4517.50 to 4517.65 of the Revised Code.')." (ECF No. 29, ¶ 49, PageID #418.)

5

>Answer: "Because paragraph 49 purports to partially quote a statute, Ford refers to that statute as the best evidence of its contents and denies any characterization of it that conflicts with the contents of the statute and any allegations against Ford that may be contained in paragraph 49." (ECF No. 30, ¶ 49, PageID #454.)

In those paragraphs, the second amended complaint merely alleges that the statutes at issue contain the words they indisputably do. Nor do these allegations advance any particular interpretation of the statutes. Ford merely responded to them by agreeing that the statutes say what they say. But that is not the same thing as agreeing that the statutes mean what Plaintiffs say they mean or would like them to mean. Therefore, interpretation of the statutes remains a disputed issue of law for the Court.

Moreover, Ford does not admit that it has failed to comply with Ohio law. Plaintiffs claim that Ford admits its violation of State law by not providing the information that they requested. (*See* ECF No. 37, PageID #527–28.) Plaintiffs rely on Ford's admission that Plaintiffs twice "requested a complete breakdown by model, color, and equipment of the allocations for each wholesale in 2020, for each dealership in the [Northeast Ohio] region, including how the allocations were derived, as applied to any mathematical formula or system for allocation." (ECF No. 35-1, PageID #505.) Although this request for admission tracks the language of Section 4517.59(A)(14), Plaintiffs overlook that Defendant contends that Plaintiffs demand more than the statute requires them to provide. (ECF No. 39, PageID #538–39.) Accordingly,

Defendant's admission raises the question whether the statute entitles Plaintiffs to the information at issue.

Contrary to Plaintiffs' argument, Ford's positions, admissions in the pleadings, and discovery responses do *not* resolve Plaintiffs' claims. Although Plaintiffs overread the record, the disputes between the parties over Plaintiffs' interpretation of the record do not forestall resolution of the legal questions before the Court on the motion for partial summary judgment.

## STATEMENT OF THE CASE

Plaintiffs' second amended complaint asserts six counts, though some actually seek remedies and do not constitute stand-alone causes of action: (1) a declaratory judgment that Ohio law requires Ford to disclose information regarding its system of new vehicle allocation among dealers in the Pittsburgh region; (2) a declaratory judgment that the remedy for a violation is a mandatory injunction to force this disclosure; (3) violations of the Ohio Motor Vehicle Dealers Act; (4) violation of the federal Automobile Dealers' Day in Court Act; (5) injunctive relief; and (6) tortious interference with Plaintiffs' customers. (ECF No. 29, ¶¶ 45–199, PageID #417–44.)

Plaintiffs seek a partial summary judgment on Counts 1 and 2. (ECF No. 37.) Regarding Count 1, Plaintiffs seek a declaration that "Plaintiffs indeed have the right, guaranteed by statute, to the information that Defendant must disclose to Plaintiffs under, and pursuant to, the express mandate of R.C. 4517.59(A)(14)"—specifically, Ford's system of allocating new motor vehicles among dealers in the Pittsburgh region. (ECF No. 29, ¶ 53, PageID #418.) Count 2 seeks a declaration

7

that Ford's violation of the statute entitles Plaintiffs to a mandatory injunction forcing the disclosure of the information Plaintiffs seek. (*Id.*, ¶ 57, PageID #419.)

Based on the record before the Court, the dispute at this point in the proceedings turns on the particular information Ohio law obligates Ford to disclose. Plaintiffs maintain that Ford must disclose which new cars each dealer in the Pittsburgh region receives and how Ford made that determination—whether it relied on a formula or its discretion. (ECF No. 37, PageID #514; ECF No. 40, PageID #553.) Plaintiffs seek nothing short of information regarding "the process and the resulting destination of every motor vehicle distributed by Ford" within the Pittsburgh region. (ECF No. 37, PageID #514.) At bottom, the parties dispute whether Ford must disclose (1) which cars each dealership receives, and (2) how it exercises its discretion when it distributes new vehicles.

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, the movant is entitled to summary judgment if the nonmoving party failed to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Ultimately, the Court must determine whether

8

"one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Statutory interpretation presents a question of law. *Bureau of Workers' Comp. v. Verlinger*, 153 Ohio St. 3d 492, 2018-Ohio-1481, 108 N.E.3d 70, ¶ 6; *United States v. Dedman*, 527 F.3d 577, 584 (6th Cir. 2008). In interpreting an Ohio statute, the Court is "obliged to decide the case as [it] believe[s] the [Ohio] Supreme Court would." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 385 (6th Cir. 2009). Where, as here, no decision of the Ohio Supreme Court addresses the question presented, the Court must predict how the Ohio Supreme Court would rule if it considered the issue. *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001); *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

In making its prediction, the Court adopts the Ohio Supreme Court's approach to statutory interpretation. When construing statutes, Ohio courts seek to "determine and give effect to the intent of the General Assembly as expressed in the language it enacted." *Pelletier v. Campbell*, 153 Ohio St. 3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 14 (citations omitted). To determine that intent, a court begins with the statute's plain language. *Carnes v. Kemp*, 104 Ohio St. 3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 16; *Sugarcreek Twp. v. Centerville*, 133 Ohio St. 3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 19. If the statute's language is plain and unambiguous, the Court need not apply the rules of statutory construction because such a statute is applied, not interpreted. *Pelletier*, 2018-Ohio-2121, at ¶ 14. An ambiguous statute

9

is one "capable of bearing more than one meaning." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8 (quoting *State v. Hurd*, 89 Ohio St. 3d 616, 618, 734 N.E.2d 365 (2000)).

When assessing a statute's plain language, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Ohio Rev. Code § 1.42; *see also State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 5. "To determine the common, everyday meaning of a word, [Ohio courts] have consistently used dictionary definitions." *State v. Wells*, 91 Ohio St. 3d 32, 34, 740 N.E.2d 1097 (2001) (citations omitted). "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Ohio Rev. Code § 1.42.

## ANALYSIS

Even though Plaintiffs move for partial summary judgment on two counts, whether the Court grants their motion depends on one issue: the interpretation of Section 4517.59(A)(14). In addressing this issue, the Court starts with the language of the statute.

### I. The Plain Meaning of the Statutory Text

Chapter 4517 of the Ohio Revised Code governs motor vehicle dealers, among others. Section 4517.59 relates to certain aspects of the relationship between manufacturers of new motor vehicles and the franchisees who sell them to consumers. That statute, titled "Prohibited Acts," provides, in relevant part:

> (A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

10

> (14) Refuse to disclose to any new motor vehicle dealer who handles the same line-make, the manner and mode of distribution of that line-make within the same county, or if a line-make is allocated among new motor vehicle dealers, refuse to disclose to any new motor vehicle dealer that handles the same line-make the system of allocation, including, but not limited to, a complete breakdown by model, color, equipment, other items or terms, and a concise listing of dealerships with an explanation of the derivation of the allocation system including its mathematical formula in a clear and comprehensible form[.]

Section 4517.64 forbids a franchisor from failing to make the disclosures required under that section, making it a fourth-degree misdemeanor. Ohio Rev. Code § 4517.64(C).

Section 4517.59(A)(14) has three separate operative provisions. The first requires disclosure of the franchisor's "manner and mode" of distributing vehicles to dealers within the same county. Specifically, it prohibits a franchisor from "[r]efus[ing] to disclose to any new motor vehicle dealer who handles the same line-make, the manner and mode of distribution of that line-make *within the same county*." Ohio Rev. Code § 4517.59 (emphasis added). Second, and in the alternative, it prohibits a franchisor from refusing to disclose to a dealer, without reference to the geographical or political limitation of a county's lines, its "system of allocation," including "a complete breakdown by model, color, equipment, other items or terms." *Id.* Third, the statute requires disclosure of "a concise listing of dealerships with an explanation of the derivation of the allocation system including its mathematical formula in a clear and comprehensible form." *Id.*

Primarily, the parties' dispute involves the second provision—and the meaning of the phrase "system of allocation" in it—and the related phrase "allocation system" in the third. (*See* [ECF No. 29](#), ¶ 53, PageID #418–19 (seeking a declaratory judgment that Ford disclose its "system of allocation of Ford-branded new motor vehicles among the Ford dealers of Ford's Pittsburgh Region including . . . a complete breakdown by model, color, and equipment, and a concise listing of dealerships"); *id.*, PageID #444 (same); [ECF No. 35-1](#), PageID #505–06; [ECF No. 37](#), PageID #514.) Plaintiffs argue that the plain meaning of that provision requires Ford to provide an itemization of every new motor vehicle it distributes in the Pittsburgh region and explain how and why it makes that allocation. That interpretation requires Ford to disclose which cars each dealership receives, in addition to the mathematical formula for allocation, and how Ford exercises its discretion in its initial withholding and supplemental distribution. ([ECF No. 37](#), PageID #514; [ECF No. 40](#), PageID #553.) Defendant argues that the second provision's plain meaning requires it to disclose only the dealers against which Plaintiffs compete and the mathematical formula behind its initial wholesale allocation. ([ECF No. 39](#), PageID #541.)

Chapter 4517 does not define the terms "system" or "allocation" or the phrase "system of allocation" (or its Germanic compound "allocation system"). In common usage, an allocation means a share, portion, or quota, particularly that given to a particular person. *See, e.g.*, *Allocation*, Oxford English Dictionary 3b (3d ed. 2012) & (supp. 2021). And, as relevant here, system means an organized scheme or method of procedure. *System*, Oxford English Dictionary 1, 13 & 14 (3d ed. 2012) & (supp.

12

2021); *see also Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/system (last visited Nov. 20, 2022). Therefore, in common usage, a "system of allocation" means the method or procedure for determining a particular person's share of an allotment.

On its face, however, Section 4517.59(A)(14) regulates the specific relationship between a franchisor that distributes new motor vehicles and the franchisees or dealers who sell them in Ohio. In other words, this statute applies to a particular context such that it has a specialized meaning within the industry it regulates, and Ohio law requires reading such a statute accordingly. Ohio Rev. Code § 1.42. With that additional stipulation, Section 4517.59(A)(14) takes on a more refined meaning. It requires disclosure of the method or procedure for determining a franchisee's share of the same line-make of vehicles distributed within Ohio. By obligating a franchisor "to disclose to any new motor vehicle dealer that handles the same line-make *the system of allocation*," the statute requires the disclosure only of the procedures the franchisor uses to determine a particular franchisee's share of new motor vehicles among relevant dealers—not the allocation to each.

This specialized meaning operates against the backdrop of the real-world practices in the industry the statute regulates, about which the record reflects general agreement. Ford makes an initial wholesale allocation of new motor vehicles (ECF No. 29, ¶ 79, PageID #422; ECF No. 30, ¶ 79, PageID #456), subject to a pre-allocation discretionary holdback (ECF No. 30, ¶¶ 94–98, PageID #457–58). Following this initial allocation, Ford offers additional vehicles to its dealers on a

13

discretionary basis. ([ECF No. 35-1](), PageID #485.) As applied to these practices, the statute requires disclosure of the procedure for determining a franchisee's share of the initial allocation of new motor vehicles.

That leaves the matter of the exercise of Ford's discretion in the pre-allocation holdback and secondary offering following the initial allocation. At first blush, this reading of the statute might appear to require disclosure of *all* aspects of the method or procedure for determining a franchisee's share of the vehicles that a franchisor distributes within the State, including those involving the exercise of discretion. It does not. Again, the plain language of the statute requires disclosure of the "system"—a term that matters in its interpretation. Because that term's meaning connotes an element of organization as part of a method or procedure, Section 4517.59(A)(14) stops short of requiring disclosure of discretionary allocations of new motor vehicles.

For these reasons, Section 4517.59(A)(14) requires that Ford disclose to its dealers "the system of allocation," meaning the method or procedure for determining the share of the initial allocation of new motor vehicles Ford distributes to franchisees in Ohio. Also, the third provision of the statute requires disclosure of a listing of dealerships, explaining how Ford derives the system of allocation and the mathematical formula used. In the Court's view, the Ohio Supreme Court would likely rule that this reading of Section 4517.59(A)(14) expresses the plain and unambiguous intent of the General Assembly.

## II. Plaintiffs' Counterarguments

In support of their view that Section 4517.59(A)(14) requires more, Plaintiffs raise several counterarguments that fall into two main categories.

### II.A. Textual Arguments

Plaintiffs begin with three text-based criticisms against the interpretation of Section 4517.59(A)(14) that the Court adopts.

*First*, Plaintiffs argue that the phrase "system of allocation" cannot refer only to the vehicles offered in Ford's initial allocation because the word "offered" does not appear in Section 4517.59(A)(14). (ECF No. 40, PageID #554.) Instead, they contend that the phrase refers to all vehicles distributed because the terms "allocation" and "distribution" and their accompanying phrases are used interchangeably in Section 4517.59(A)(14). (*Id.*, PageID #551 & #555.) This interpretation would require Ford to disclose vehicles distributed through the exercise of its discretion in the pre-allocation holdback and secondary offering as well as the allocation system itself.

This argument misses the mark. Although the word "offered" does not appear in Section 4517.59(A)(14), the statute's use of the term "system" focuses the required disclosure upstream from the actual distribution. Moreover, those terms and phrases are not interchangeable. Ohio courts "generally presume that when the General Assembly uses different words in a statute, it intends those words to have different meanings." *Electronic Classroom of Tomorrow v. Ohio Dep't of Educ.*, 154 Ohio St. 3d 584, 2018-Ohio-3126, 118 N.E.3d 907, ¶ 86 (Kennedy, J., dissenting). Plaintiffs fail to provide a textual basis to rebut that presumption in the interpretation of Section 4517.59(A)(14). Indeed, examination of the use of the relevant terms

15

throughout Chapter 4517 does not support the interpretation Plaintiffs advance. For example, Chapter 4517 uses the term "distribution" or a variation of it twenty-three times in ten provisions. None uses the term synonymously with "allocation." Where these other provisions refer to a "distribution" or "system of distribution," as in Section 4517.541(A)(3) or Section 4517.542(F), they offer franchisees broader protections and mean more than just an allocation or the initial wholesale allocation. In this way, the plain language of the broader Chapter confirms that use of the word "allocation" in the latter two provisions of Section 4517.59(A)(14) means something different than the "distribution" that the first part of that statute references and that Plaintiffs seek.

*Second*, Plaintiffs cite Section 4517.59(A)(14)'s requirement that a franchisor provide a "complete breakdown" and "an explanation of the derivation of the allocation system." ([ECF No. 40](), PageID #556.) In their view, those phrases require Ford to provide Plaintiffs with *all* the variables underlying their methods and information regarding *all* cars distributed. Without more, the terms "complete," "explanation," and "derivation" might carry such a meaning. In context, however, they do not in Section 4517.59(A)(14). Indeed, the statute limits the phrases on which Plaintiffs rely—"complete breakdown" and "an explanation of the derivation"—to "the system of allocation," which includes "a complete breakdown" of material items and the mathematical formula. Therefore, these terms do not expand the scope of the disclosure Section 4517.59(A)(14) requires.

16

*Third*, at oral argument, Plaintiffs objected that the Court's reading creates an exception that swallows the rule. Perhaps. In theory, a strategic or opportunistic franchisor could insulate itself from disclosing any information under Section 4517.59(A)(14) by distributing all its vehicles on a discretionary basis. (ECF No. 37, PageID #526; ECF No. 40, PageID #557.) Even in the unlikely event market relationships would permit such a development, as Plaintiffs notes, the General Assembly can amend the statute and has done so over time. (*See* ECF No. 40, PageID #560–61.)

### II.B. Purposive Arguments

Plaintiffs lodge three additional counterarguments that rely on the statute's purpose.

*First*, Plaintiffs emphasize Section 4517.59(A)(14)'s purpose, as outlined in Chapter 4517's precatory language. (*Id.*, PageID #552 & #559.) The General Assembly directed courts liberally to construe the Chapter "to ensure a sound system for distributing and selling motor vehicles" through, among other things, "[m]aintaining full and fair competition among intra-brand and inter-brand dealers" and to prevent discrimination or other abuses. Ohio Rev. Code § 4517.011(A)(3) & (4). In light of Section 4517.011, Plaintiffs read Section 4517.59(A)(14) as creating an informed system of checks and balances that ensures franchisors do not act in a discriminatory or anticompetitive manner in the *distribution* of vehicles. (ECF No. 37, PageID #526.) Plaintiffs find further support for this view in the 2010 amendment to Section 4517.59, which advanced the Chapter's anti-discrimination purpose. (ECF No. 40, PageID #560.) To help achieve that end, Plaintiffs argue that

17

franchisors must disclose which vehicles each dealer received and why and how. (*Id.*, PageID #557.)

While statutory interpretation requires courts to consider "the design of the statute as a whole," *United States v. Ninety-Three Firearms*, 330 F.3d 414, 420 (6th Cir. 2003), that design is not an invitation to disregard a statute's plain language, *State ex rel. Cuyahoga Cnty. v. State Pers. Bd. of Rev.*, 82 Ohio St. 3d 496, 499, 1998-Ohio-191, 696 N.E.2d 1054 (1998). And Section 4517.59(A)(14)'s plain language is clear. By providing dealers with information regarding a franchisor's initial allocation, the General Assembly supported Chapter 4517's anti-discrimination purpose in the distribution of new motor vehicles. Through the language in Section 4517.59(A)(14), the General Assembly sought to advance that end. It can amend that language to expand the requirements for disclosures if it chooses.

*Second*, building off Chapter 4517's anti-discrimination purpose, Plaintiffs argue that the Court's interpretation will prevent dealers from bringing and maintaining discrimination claims against franchisors. According to Plaintiffs, Section 4517.59(A)(14) is a pre-suit discovery tool that enables dealers to assess whether a franchisor discriminates in the allocation of new motor vehicles. (ECF No. 37, PageID #526; ECF No. 40, PageID #563.) In this view, disclosure of the information required is only effective if it covers every vehicle distributed.

This argument overlooks other prefiling discovery tools already available, for example Rule 34(D) of the Ohio Rules of Civil Procedure and Section 2317.48 of the Ohio Revised Code. *See Huge v. Ford Motor Co.*, 155 Ohio App. 3d 730, 2004-Ohio-

18

232, 803 N.E.2d 859, ¶ 12 (Ohio Ct. App. 2004) (describing how those provisions govern the prefiling discovery process). Nothing in the text of Section 4517.59(A)(14) suggests that the statute operates as a similar prefiling discovery tool. Moreover, even some limited research for cases interpretating Section 4517.59(A)(14) shows that other plaintiffs bring claims alleging discrimination in violation of Chapter 4517 without any indication that they first received the sort of information under Section 4517.59(A)(14) that Plaintiffs contend the statute requires. *See, e.g.*, *Fyda Freightliner Cincinnati, Inc. v. Daimler Vans USA LLC*, No. 2:21-cv-5077, 2022 WL 2073394, at *3 (S.D. Ohio June 9, 2022); *Enterprises v. Volvo Cars of N. Am., LLC*, No. 2:14-cv-360, 2016 WL 4480343, at *3 & 10 (S.D. Ohio Aug. 25, 2016).

*Third*, Plaintiffs object that interpreting the statute to cover only Ford's initial allocation cannot be correct because statutes are not interpreted to lead to illogical results. (*See* ECF No. 40, PageID #564.) They use a hypothetical to illustrate the point. (*Id.*, PageID #555.) Ford offers one dealer ten vehicles, which it accepts, but Ford distributes only two. Ford offers a second dealer ten vehicles, which it accepts, but distributes fifty. Under the Court's interpretation, Plaintiffs contend that the franchisor, in both cases, must disclose only information regarding the ten vehicles offered, not the actual distribution each dealer receives. (*Id.*) Correct. But that does not make the result absurd or illogical. The statute balances the interests of franchisors, franchisees, and the public, so the Court reads the phrase "system of allocation" as representing the General Assembly's intent to balance those interests. "[I]t is not the role of the courts . . . 'to second-guess the General Assembly's policy

19

choices.'" *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St. 3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35.

## CONCLUSION

The plain language of Section 4517.59(A)(14) does not entitle Plaintiffs to the detailed information they seek from Ford.  Accordingly, the Court **DENIES** Plaintiffs' motion for summary judgment on Counts 1 and 2.  ([ECF No. 37](#).)  Plaintiffs or their counsel might still obtain that information through discovery.  On that separate issue, the Court expresses no opinion.

**SO ORDERED.**

Dated:  December 5, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio