UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTY FORD LINCOLN MERCURY, INC., *et al.*, | ) ) ) | Case No. 1:21-cv-02085 |
| | ) | Judge J. Philip Calabrese |
| Plaintiffs, | ) ) | |
| | ) | Magistrate Judge |
| v. | ) | Jonathan D. Greenberg |
| | ) | |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

## OPINION AND ORDER

On July 5, 2023, the Special Master issued his first discovery order pursuant to Rule 53(d). (ECF No. 63.) It addressed five of the parties' outstanding discovery issues. Both parties timely objected. (ECF No. 64; ECF No. 66; ECF No. 67.) Plaintiffs object to the Special Master's resolution of Issue Two, and Defendant objects to his rulings on Issues One and Five. For the reasons that follow, the Court (1) **OVERRULES** Plaintiffs' objection concerning Issue Two and Defendant's objection concerning Issue One and (2) **SUSTAINS** Defendant's objection concerning Issue Five.

## BACKGROUND

To reduce costs, the Special Master's Order assumed familiarity with the issues and only briefly recounted the applicable procedural background. (ECF No. 63, PageID #1338 & #1341–42.) The Court does so as well and provides only limited additional background as it bears on the issues to which the parties object.

### A. Relevant Issues

The Special Master's Order addressed five discovery disputes. (*Id.*, PageID #1343–51.) The parties' objections concern only Issues One, Two, and Five. (ECF No. 64, PageID #1365; ECF No. 66, PageID #1401.) Those issues address the following:

Issue One. Plaintiffs' objections to Ford's alleged use/misuse of the ATTORNEYS EYES ONLY designation under the protective order.

Issue Two. Ford's alleged refusal to provide any discovery regarding commercial vehicle allocations.

Issue Five. Plaintiffs' contention that Ford failed to comply with the Court's July 15, 2022 Order (ECF No. 38) by failing to produce commitment guide reports "in order by run date" entitling Plaintiffs to the reimbursement of expenses they paid to obtain the reports in the manner ordered.

(ECF No. 63-1, PageID #1353, #1355 & #1359; ECF No. 63-2, PageID #1361 & #1364.)

### B. Procedure

The parties described their outstanding discovery disputes during an initial telephone conference with the Special Master on May 12, 2023. (ECF No. 63, PageID #1341.) Before ruling on those issues, the Special Master provided the parties several opportunities to present their respective positions. (*See id.*) First, the parties submitted a two-volume set of joint exhibits and position statements. (*Id.*) Second, the Special Master held an in-person hearing on June 12, 2023. (*Id.*) He conducted two follow-up video conferences. (*Id.*, PageID #1341–42.) Additionally, the parties made supplemental submissions. (*Id.*, PageID #1342; *see, e.g.*, ECF No. 64-2.)

On July 5, 2023, the Special Master issued his discovery order. (ECF No. 63.) Both parties object as noted. (ECF No. 64; ECF No. 66; ECF No. 67.)

## STANDARD OF REVIEW

When acting on a special master's order, the Court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). In this respect, the ultimate decision rests with the Court and must be its own. *See Quantum Sail Design Grp., LLC v. Jannie Reuvers Sails, Ltd.*, 827 F. App'x 485, 491 (6th Cir. 2020). In reviewing objections to a master's findings of facts, a court operates with "respect and a tacit presumption of correctness" but "assumes the ultimate responsibility for deciding all matters." *Id.* (cleaned up).

Under Rule 53(f)(5), "the court may set aside a master's ruling on a procedural matter only for an abuse of discretion." The Appointing Order did not change this standard of review. It provides that "the Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion." (ECF No. 61, PageID #1329.) A special master's discovery ruling presents a procedural matter. (*Id.* (citing *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 5:18-cv-1729, 2020 WL 7706257, at *2 (N.D. Ohio Dec. 29, 2020)).) An abuse of discretion occurs where the reviewing court has a definite and firm conviction that a clear error of judgment has occurred. *See, e.g., Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018). A ruling that is arbitrary, unjustifiable, or clearly unreasonable constitutes an abuse of discretion. *Plain Dealer Publ'g Co. v. City of Lakewood,* 794 F.2d 1139,

3

1148 (6th Cir. 1986). In practice, this standard results in upholding a decision that falls within a broad range of permissible choices even where the reviewing court might not reach the same result. *See, e.g.*, *Elfelt v. United States*, 149 F. App'x 402, 409 (6th Cir. 2005) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990)); *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986).

## ANALYSIS

Plaintiffs and Ford object to various portions of the Special Master's discovery order. (ECF No. 64; ECF No. 66; ECF No. 67.) The Court addresses each in turn.

### I. Plaintiffs' Objection

Plaintiffs request discovery regarding Defendant's allocation of commercial vehicles. The Special Master limited Plaintiffs' request "to such information that relates only to Plaintiff 'Liberty Ford, Inc.'" (ECF No. 63, PageID #1339.) In his view, Liberty Ford is the only Plaintiff that references commercial vehicles in the second amended complaint, doing so in Count Six. (*Id.*, PageID #1346–47; *see also* ECF No. 29, ¶¶ 156–91, PageID #437–42.)

For two reasons, Plaintiffs argue that the Special Master abused his discretion by limiting their requested discovery. (ECF No. 64, PageID #1368.) *First*, Plaintiffs contend that he read their complaint too narrowly. Outside of Count Six, Plaintiffs raise claims involving new motor vehicle allocations. (*Id.*, PageID #1366.) And according to Plaintiffs, new motor vehicles under Section 4517.01 include commercial vehicles. (*Id.*, PageID #1365–66 & #1367–68.) Therefore, Plaintiffs maintain that they are entitled to discovery regarding commercial vehicles on those other counts too. (*See generally* ECF No. 64.) *Second*, Plaintiffs contend that the Special Master

4

ignored evidence in the record and provided insufficient legal analysis. (*Id.*, PageID #1369–70.)

Based on a review of the record, the Court cannot say that the Special Master abused his discretion on either basis. In its most recent discovery ruling, issued on February 14, 2023, the Court outlined the general contours of Plaintiffs' claims as they bear on the scope of permissible discovery. (*See* ECF No. 48, PageID #679–82 & #683.) The Special Master's Order adheres to that ruling. As the Special Master recognized (ECF No. 63, PageID #1346), only Count Six expressly involves commercial vehicles, and does for one specific entity (ECF No. 48, PageID #683).

Other counts involve new motor vehicles, which might appear to encompass commercial vehicles. (*See* ECF No. 64, PageID #1368; ECF No. 72, PageID #1898.) For example, Plaintiffs raise claims under Section 4517.59(A)(15) and the first clause of Section 4517.59(A)(6)(c), which prohibit discriminatory allocation. (ECF No. 48, PageID #679.) But the facts in this case remove commercial vehicles (other than in Count Six) from the operation of the statute because the record does not show that Ford *allocates* commercial vehicles within the meaning of the statute.

At most, the record reflects that unsold commercial vehicles might impact one factor in the allocation formula. (ECF No. 64-2, PageID #1378.) To the extent they do, widespread discovery into commercial vehicles is not proportional to the needs of this case. Plaintiffs can likely gather such information from Ford's Commitment Guide Reports, which it has already produced. Plaintiffs' other claims focus on

5

actions concerning their franchise agreements and Ford's treatment of Plaintiffs, not other franchisees' receipt of commercial vehicles. (ECF No. 48, PageID #679–82.)

It makes no difference that the Special Master did not refute each and every one of Plaintiffs' counterarguments or provide pages of analysis. As recognized at the outset of his Order, the Special Master did so to keep the parties' costs down. (ECF No. 63, PageID #1338.) Moreover, the record reflects that he considered the parties' submissions and arguments in their entirety. (*Id.*, PageID #1346 (describing the parties' position statements, their letters, and discussion at the June 12, 2023 hearing as the relevant record).) Accordingly, the Special Master did not abuse his discretion, and the Court **OVERRULES** Plaintiffs' objection.

## II. Defendant's Objections

Ford objects to the Special Master's rulings on Issues One and Five, contending, among other things, that they are incompatible with prior orders. (*See generally* ECF No. 67.)

### II.A. Attorneys' Eyes Only Designation

Plaintiffs request that Defendant remove the Attorneys' Eyes Only designation from over 100,000 pages of documents that Ford produced, namely, Commitment Guide Reports, Allocation Schedule Order Bank Reports, and E-Commitment Forms. The Special Master ruled that such action was appropriate. (ECF No. 63, PageID #1339.) In his view, a CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER designation sufficiently addresses Defendant's concerns for those documents. (*Id.*) In so ruling, Defendant objects that the Special Master abused his discretion on several grounds. (*See generally* ECF No. 67.)

6

### II.A.1. Reconsideration

Defendant argues that the Special Master impermissibly reconsidered the Court's June 17, 2022 ruling. (*Id.*, PageID #1417–18.) Not so. The discovery dispute at issue then differed from the one presented now. In that earlier ruling, the Court overruled Plaintiffs' objection concerning Defendant's ability to anonymize dealer names in Commitment Guide Reports produced with an Attorneys' Eyes Only designation. (*See* ECF No. 32, PageID #472; *see also* Minutes, June 7, 2022 ("Plaintiff[s] objected to Defendant's anonymization of the dealers.").) In other words, the Court agreed that the identities of particular dealers in those reports could be anonymized.

However, the Court had no occasion to consider whether the underlying designation was appropriate—Plaintiffs' current contention. (ECF No. 63, PageID #1343 ("Plaintiffs object to the use of the AEO designation.").) Here, the Special Master took up the propriety of the designation, a matter the Court had not previously addressed.

### II.A.2. Risk Analysis

In his Order, the Special Master discusses the level of risk to Ford from Plaintiffs reverse engineering this anonymized information to identify confidential and competitively sensitive information. (*Id.*, PageID #1343–44.) Defendant objects that the Special Master abused his discretion by engaging in an improper analysis of such a risk. (ECF No. 67, PageID #1419–20.) As part of resolving the dispute over the propriety of the Attorneys' Eyes Only designation, the Special Master relied on "[a] review of all the materials submitted on th[e] issue, and the discussion during

7

the hearing." (ECF No. 63, PageID #1345.) He addressed the risk of reverse engineering in response to an argument that Defendant made to support the designation and explained why a Confidential designation afforded adequate protection and assurance against the risk Ford identified as a basis for the designation. This explanation by the Special Master does not amount to an abuse of discretion.

### II.A.3. Protective Order

At bottom, Defendant argues that the Stipulated Protective Order specifically identifies the documents at issue as appropriate for the Attorneys' Eyes Only designation, making the Special Master's Order contrary to the parties' agreement. (*See* ECF No. 67, PageID #1419–20.) In relevant part, the Stipulated Protective Order provides:

> Information that qualifies for RESTRICTED CONFIDENTIAL – ATTORNEYS EYES ONLY protection is . . . (d) any other highly confidential information., which includes, but is not limited to, information about other dealers' internal business practices, competitive choices/practices, allocation figures, wholesale figures, Commitment Guide Reports for other dealers, any other highly sensitive competitive information of dealers who are not a party to this case, and any other information that disclosure of same would give non-producing party an unfair competitive advantage against other dealers.

(ECF No. 20, PageID #166.) Generally, practice under an umbrella protective order contemplates blanket designations to facilitate quicker production of documents. If the requesting party later has a good-faith basis for questioning the designation of particular documents, it may do so through standard meet-and-confer processes culminating in litigation if necessary. Notably, the Stipulated Protective Order here

does not permit such an approach: "The parties agree that mass, indiscriminate, or routinized [AEO] designations are prohibited." (ECF No. 20, PageID #167.)

With this latter provision in mind, the Special Master merely rejected "wholesale AEO designation by Defendant" as too restrictive. (ECF No. 63, PageID #1345.) Defendant argues that the Special Master withheld the benefit of its bargain, placed an expiration date on the protective order, and excused Plaintiffs' lack of diligence. (ECF No. 67, PageID #1413–15, #1416–17 & #1418–19.) But the ruling just gives effect to the Stipulated Protective Order.

Here, the language of the Stipulated Protective Order "qualifies" Commitment Guide Reports for designation as Attorneys' Eyes Only material. But it does not provide that these reports "shall" or "must" (for example) retain that level of protection. Nor does qualifying Commitment Guide Reports or other materials as Attorneys' Eyes Only alter the Stipulated Protective Order's plain language prohibiting "mass, indiscriminate, or routinized [AEO] designations." In other words, the Stipulated Protective Order contemplates the action the Special Master here took: particularized review of whether certain Commitment Guide Reports (or other documents marked as Attorneys' Eyes Only) merit that level of protection. In this respect, Defendant attempts to alter or expand the language of the Stipulated Protective Order. But the Order's other provisions (including its dispute-resolution mechanism) and typical discovery practice permit review of the designations the parties make under the agreement. In any event, at some point those designations must fall away because trials are open to the public.

9

For these reasons, the Special Master did not abuse his discretion. Again, his ruling relates to "wholesale AEO designation" and, after conducting appropriate diligence, he determined that anonymization (an unresolved issue at the time the Stipulated Protective Order was negotiated and entered) along with treatment of the reports as Confidential was appropriate. His Order does not foreclose Defendant from showing that particular reports merit the more restrictive Attorneys' Eyes Only designation. Further, he accounted for differences between the sample Commitment Guide Reports available at the time the Stipulated Protective Order was negotiated and entered and those that Defendant ultimately produced. He had the discretion to do so. In short, nothing in the record suggests that the Special Master did not understand the standard for Attorneys' Eyes Only protection under the protective order or exercised his discretion outside the range of options permissibly available to him.

Finally, Defendant relies on cases addressing similar issues where courts made determinations of the propriety of designations under a protective order in response to an initial challenge. (*See* ECF No. 67, PageID #1413–14 (discussing *Mahavisno v. Compendia Bioscience, Inc.*, No. 13-12207, 2015 WL 248798 (E.D. Mich. Jan. 20, 2015), and *Omega Homes, Inc. v. Citicorp. Acceptance Co.*, 656 F. Supp. 393 (W.D. Va. 1987)).) In a similar posture, the Court might or might not have reached the same determination as the Special Master. That is not the question. In the current procedural posture, the Court reviews only whether the Special Master abused his discretion. He did not. Nor do Defendant's other arguments alter that determination.

10

\* \* \*

For these reasons, the Court **OVERRULES** Defendant's objection on Issue One. In doing so, the Court reminds Plaintiffs that documents designated CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER must only be used or disclosed "to prepare for and to conduct discovery and trial in this action." (ECF No. 20, PageID #167.) The Court will strictly enforce that limitation.

### II.B. Reimbursement of Costs

As to Issue Five, the parties dispute who is responsible for Defendant's costs to re-produce its Commitment Guide Reports. (*Compare* ECF No. 63-1, PageID #1359, *with* ECF No. 63-2, PageID #1364.) By way of background, the Court previously resolved a discovery dispute by allowing Plaintiffs to choose the format of production for the reports. But, the Court ruled, if Plaintiffs opted for "PDFs with OCR applied with load files and metadata in order by run date for all 178 dealers suitable for use in Concordance," then they "do so at their cost and expense." (ECF No. 38, PageID #534.)

Plaintiffs elected production in that manner, which resulted in Ford incurring costs, for present purposes, in the amount of $5,369.76, of which Plaintiffs paid $2,200.00. (ECF No. 63, PageID #1348–49.) Defendant sought payment of the balance, and the Special Master ruled that, based on the state of the record, "it is not readily apparent who is responsible for the current state of the production. As such, the undersigned finds that, in the spirit of moving things along," the balance of the costs should not be shifted to Plaintiffs. (*Id.*, PageID #1349.)

11

Defendant contends that the Special Master's ruling conflicts with the Court's July 15, 2022 Order. (ECF No. 67, PageID #1420.) In its view, absent a finding that (1) Ford failed to comply with that Order or (2) did not receive Plaintiffs' approval for the vendor, the Special Master could not order Defendant to cover the production costs. (*Id.*) Principally, Plaintiffs argue that "Defendant offers no support for that contention." (ECF No. 71, PageID #1842.)

The law makes clear that parties must reasonably and promptly comply with court orders. To this point, Plaintiffs have not done so. Instead, they opted for self-help. The Court's Order of July 15, 2022 (ECF No. 38) required Plaintiffs to bear the fees, costs, and other expenses associated with an outside vendor if they opted for the format of production they did. That option also shifted the well-known technical risks associated with discovery of electronically stored information to Plaintiffs. They did not complain to the Court about any issue with the production or otherwise seek guidance or direction on how to proceed in the face of some unexpected development. Absent such a determination or guidance, the Court's Order imposed a relatively simple, straightforward obligation on Plaintiffs with which they must comply.

In the end, the Special Master's ruling, which follows the general practice of discovery and seeks the most economical resolution of a fairly small-dollar dispute, might indeed prove to be the most economical given the volume of the production at issue—approximately 28,385 documents. It also likely provides the wisest course for heading off other disputes. Nonetheless, unless and until the development of a record that supports the reallocation of costs based on Defendant's non-compliance, which

12

would likely equal or exceed the amount at issue, Plaintiffs' obligation is to comply with the Court's prior Order.

For these reasons, the Court **SUSTAINS** Defendant's objection subject to the Special Master revisiting the issue if the record ultimately warrants it.

## CONCLUSION

For the foregoing reasons, the Court (1) **OVERRULES** Plaintiffs' objection to the Special Master's Order on Issue Two and Defendant's objection on Issue One and (2) **SUSTAINS** Defendant's objection to the Special Master's Order on Issue Five.

**SO ORDERED.**

Dated: August 4, 2023

J. Philip Calabrese
United States District Judge
Northern District of Ohio