# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTY FORD LINCOLN MERCURY, INC., *et al.*, | ) ) ) | Case No. 1:21-cv-02085 |
| | ) | Judge J. Philip Calabrese |
| Plaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Jonathan D. Greenberg |
| | ) | |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) ) | |
| | ) | |

## OPINION AND ORDER

On February 24, 2024, the Special Master issued his second discovery order pursuant to Rule 53(d) resolving one of the parties' outstanding discovery disputes: the format of production of final wholesale vehicle allocation data.  (ECF No. 76.) Defendant timely objected.  (ECF No. 79.)  Plaintiffs opposed Defendant's objection. (ECF No. 82.)  For the reasons that follow, the Court **OVERRULES** Defendant's objection.

## BACKGROUND

To reduce costs, the Special Master's Order assumed familiarity with the issues and only briefly recounted the applicable procedural background.  (ECF No. 76, PageID #1927–30.)  The Court does so as well and provides only limited additional background as it bears on the issue to which Defendant objects.

### A.    Relevant Issue

The Special Master's Order addressed one issue:  "Issue #108 of the Special Master's Index of Issues."  (ECF No. 76, PageID #1928.)   This issue involves

Defendant's wholesale vehicle allocation process.  (*Id.*)  Plaintiffs argued that Defendant failed to produce reports that contained this wholesale allocation data, entitled "eCommitment Order Commitment" also referred to as "Final Commitment Reports." (*Id.*)  Defendant argued that it produced the data Plaintiffs sought, albeit in a different format, in a series of reports called the Allocation Schedule Order Bank Reports ("ASOBRs").  (*See* ECF No. 81-5, PageID #2700–01.)

### B.  Procedure and the Special Master's Ruling

The Special Master held multiple Zoom conferences and informal discussions to resolve Issue #108.  (ECF No. 76, PageID #1929.)  After the parties could not reach an informal resolution, the issue became the main topic of a two-day hearing on January 25 and 26, 2024.  (*Id.*; ECF No. 75, PageID #1924.)

At the hearing, Plaintiffs agreed that they had the relevant wholesale allocation data in the ASOBRs but explained that the ASOBR format was "beyond cumbersome" and financially infeasible to work with.  (ECF No. 78-1, PageID #1983.) Plaintiffs described that reformatting the ASOBRs would involve working with 100,000 documents and require "between 5,800 and 6,000 man-hours at a cost in excess of a million dollars."  (*Id.*, PageID #1983–96 & 2104–14.)  Also, the parties discussed whether the wholesale allocation data was available in other formats.  (*See id.*, PageID #1983–87.)

During the hearing, the Special Master asked Defendant if it had a response to Plaintiffs' characterization of the work needed to reformat the wholesale allocation data.  (*Id.*, PageID #1998, 2013, & 2150–52.)  Defendant did not object to Plaintiffs' presentation about the cost of getting the data in their desired format during the

hearing; instead, Defendant sent an email to the Special Master after the hearing with objections to Plaintiffs' testimony. (*See* ECF No. 81-3, PageID #2668–70 (transcript of the February 9, 2024 status conference).) The Special Master disregarded the arguments made in the email because they were not made under oath and lacked factual support. (*Id.*, PageID #2668.) During the hearing (and under oath), Defendant testified that "no reports [] exist in the form the plaintiffs suggest" because it does not "have [the reports] in an easy format." (ECF No. 78-1, PageID #1995–96 & 2150–51.) Further, Defendant agreed with Plaintiffs that "it's going to be expensive" to reformat the ASOBRs. (*Id.*, PageID #1995.)

At a status conference following the hearing, the Special Master stated that "[t]he whole presentation about the cost . . . was basically not disputed by Ford." (ECF No. 81-3, PageID #2668.) The Special Master found that Plaintiffs "met their [burden] . . . to establish some objective basis" to demonstrate the cost associated with reformatting the ASOBRs. (*Id.*, PageID #2669.)

Following the hearing, the Special Master requested supplemental submissions by the parties. (ECF No. 76, PageID #1929.) Based on the parties' submissions and discussions during the hearing and Zoom conferences, the Special Master made two findings: (1) the ASOBRs contained the final data points that Plaintiffs sought in discovery, but the data was "not in a usable format"; and (2) no report entitled "eCommitment Order Commitment" (also referred to as Final Commitment Reports") existed. (*Id.*; ECF No. 76-1, PageID #1932.) Additionally, the Special Master required Defendant to make a witness with knowledge of the relevant

3

document databases available for an examination under oath to determine whether the wholesale allocation data could be produced in another manner and, if so, the estimated cost.  (ECF No. 76-1, PageID #1933.)  Defendant agreed to produce the witness.  (ECF No. 76, PageID #1929–30.)

On February 13, 2024, the Special Master took the witness's testimony.  (*Id.*, PageID #1930; ECF No. 81-4, PageID #2672.)  The witness "made clear that the underlying data Plaintiffs seek is only available in the ASOBRs, and that there is no other means by which to produce that data in another format."  (ECF No. 76, PageID #1930.)

On February 24, 2024, the Special Master issued his discovery order resolving Issue #108.  (ECF No. 76.)  The Special Master ruled that Plaintiffs have the data they seek and that the ASBORs are the only source for that data.  (*Id.*, PageID #1930.)  Additionally, the Special Master characterized his finding that such data was in an "unusable format" as "limited to the question at hand, i.e., does the data exist in a format that would be more usable for Plaintiff[s]."  (*Id.*, PageID #1930–31.)  Finally, the Special Master stated that to the extent the finding at issue "implicates any other possible relief or remedies" is a matter to be determined when such remedy is sought and that "[o]n this record, there is nothing further . . . to resolve."  (*Id.*, PageID #1931.)

Defendant objects to the Special Master's finding that this data was not produced in a reasonably usable format (ECF No. 79), and Plaintiffs oppose the objection (ECF No. 82).

## ANALYSIS

When acting on a special master's order, a court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions."  Fed. R. Civ. P. 53(f)(1).  In this respect, the ultimate decision rests with the court and must be its own.  *See Quantum Sail Design Grp., LLC v. Jannie Reuvers Sails, Ltd.*, 827 F. App'x 485, 491 (6th Cir. 2020).  In reviewing objections to a master's findings of facts, a court operates with "respect and a tacit presumption of correctness" but "assumes the ultimate responsibility for deciding all matters."  *Id.* (cleaned up).

Both parties agree that the applicable standard of review is abuse of discretion. (ECF No. 79-1, PageID #2257; ECF No. 82, PageID #2716.)  Under Rule 53(f)(5), "the court may set aside a master's ruling on a procedural matter only for an abuse of discretion."  The Appointing Order did not change this standard of review.  It provides that "the Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion."  (ECF No. 61, PageID #1329.)  A special master's discovery ruling presents a procedural matter.  (*Id.* (citing *Ravin Crossbows, LLC v. Hunter's Mfg. Co.*, No. 5:18-cv-1729, 2020 WL 7706257, at *2 (N.D. Ohio Dec. 29, 2020)).)  An abuse of discretion occurs where the reviewing court has a definite and firm conviction that a clear error of judgment has occurred.  *See, e.g., Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018).  A ruling that is arbitrary, unjustifiable, or clearly unreasonable constitutes an abuse of discretion.  *Plain Dealer Publ'g Co. v. City of Lakewood,* 794 F.2d 1139, 1148 (6th Cir. 1986).  In practice, this standard results in upholding a decision that falls within a broad range of permissible

5

choices even where the reviewing court might not reach the same result.  *See, e.g.*, *Elfelt v. United States*, 149 F. App'x 402, 409 (6th Cir. 2005) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 400 (1990)); *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986).

## I.    Abuse of Discretion Review

Because Defendant effectively prevailed on this issue, the Court questions whether Defendant may properly object.  *See Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939); *McCafferty v. Centerior Serv. Co.*, 188 F.3d 508, 1999 U.S. App. LEXIS 19809, at *4 (6th Cir. Aug. 16, 1999) (unpublished) (recognizing that an appellant lacks standing to challenge the reasoning by which it prevailed).  A "winner cannot appeal a judgment merely because there are passages in the court's opinion that displease him—that may indeed come back to haunt him in a future case."  *Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir. 1992).  Because Rule 53 affords any party a right to object, the Court proceeds on the assumption that Defendant may obtain judicial review of the Special Master's ruling even though it prevailed.

Defendant objects to the Special Master's findings on four grounds:

*First,* Defendant argues that it complied with its obligations under Rule 34 in producing the ASOBRs; therefore, a finding that the data was not reasonably usable is an abuse of discretion.  The Special Master made no finding that Defendant failed to comply with Rule 34.  Even Plaintiffs do not argue that Defendant violated Rule 34. (ECF No. 82, PageID #2720.)  The Special Master's ruling is limited to the inquiry whether the data is available in a format that would be more immediately or

reasonably usable for Plaintiffs. (ECF No. 76, PageID #1930–31.) Defendant addressed the inquiry by producing a witness to testify about the ASOBR data. Upon the conclusion of the witness's testimony, the Special Master determined that there was "nothing further" to address (or for Defendant to do) because Defendant produced the witness and the witness testified that the data was only available in the ASOBR format. (*Id.*)

Defendant does not challenge the Special Master's order to produce a witness or the Special Master's judgment that there was nothing more that Defendant could do or needed to do concerning the wholesale allocation data. Defendant's speculation about whether or how Plaintiffs might use this finding against it later are hypothetical and not ripe. Indeed, the Special Master acknowledged the limited nature of his finding. This finding is not an abuse of discretion.

*Second*, Defendant argues that the ASOBRs are text-searchable PDFs; therefore, they are in a reasonably usable format. Defendant cites a series of cases in which other courts found that PDF-formatted ESI production qualifies as reasonably usable under Rule 34. (ECF No. 79-1, PageID #2257–58.) The Special Master based his finding on Plaintiffs' unchallenged testimony about the extensive time, effort, and fees required to work with the ASOBRs in a meaningful way. In some circumstances, producing text searchable PDFs might be reasonably usable. On this record, however, the ASOBRs are not reasonably usable in this format, and the Special Master did not abuse his discretion in so finding.

7

*Third*, Defendant argues that the Special Master abused his discretion because it produced the wholesale allocation data in the only available format. The Special Master treated the inquiry whether the ASOBRs were reasonably usable as separate from whether the data is available in another format—that is why the Special Master ordered Defendant to produce a witness to testify to the latter. After all, if Ford had the data in another format, there might be more options for its production or use. In this regard too, the Special Master did not abuse his discretion.

*Fourth*, Defendant argues that the Special Master relied on insufficient evidence to make his finding that the ASOBRs are not reasonably usable. Defendant waived this argument by failing to object to Plaintiffs' testimony about the work needed to reformat the data. The Special Master gave Defendant multiple opportunities to respond, but Defendant belatedly proffered counsel's unsworn statement, which was not supported. (ECF No. 81-3, PageID #2668.) The Special Master did not abuse his discretion in relying on Plaintiffs' testimony.

Upon review of the Special Master's discovery order and the record, the Court finds no abuse of discretion. Accordingly, the Court **OVERRULES** Defendant's objection.

## II.    *De Novo* Review

The Appointing Order also provides that the Court will consider *de novo* all objections to findings of fact and conclusions of law recommended by the Special Master, as Rule 53(f)(3) and (4) contemplate. (ECF No. 61, PageID #1329.) While the Court treats the Special Master's discovery rulings as procedural, erring on the side of caution, the Court also reviews the Special Master's order *de novo*.

8

When a party requests electronically stored information, Rule 34 provides that the responding party must produce the information, "in a form or forms in which [the information] is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. Pro. 34(b)(2)(E)(ii).  Simply put, Rule 34 does not require that a producing party provide electronically stored information in the requesting party's preferred format or that a producing party undertake undue burden or expense to make the information reasonably usable (though Rule 26(b)(2) might come into play in some cases).  Generally, the producing need only produce the data as ordinarily maintained or in a reasonably usable form.  *Guy v. Absopure Water Co.*, No. 20-12734, 2021 WL 11109414, at *2 (E.D. Mich. Aug. 9, 2021) (citation omitted) (describing Rule 34 as providing "by its exact terms" two alternatives for producing data); *see also* Fed. R. Civ. P. 34(b) advisory committee's note to 2006 amendment (describing the "option" to produce data in a reasonably usable form).

Assuming *arguendo* that Defendant has standing to make this objection and chose to produce the wholesale allocation data as ordinarily maintained, that choice does not foreclose a finding that the data is not reasonably usable.  That is, the Special Master's finding speaks to one of the Rule 34 requirements, but not both.  Doing so is not erroneous.  The fact that the data at issue is only available in one format does not change this determination.  Defendant cites no authority to the contrary.

Plaintiffs testified that it would take between 5,800 and 6,000 hours and over a million dollars to manually search over 100,000 pages of data to make the ASOBRs usable.  Defendant did not object to this testimony or the estimated cost—indeed,

9

Defendant testified that it did not have the data in a format that would reduce this burden for Plaintiff and that it would be expensive to change the format.  And the Court has no reason to doubt the burden to which Plaintiffs testified.  Based on the record, the Court agrees that the ASOBRs are not reasonably usable.  *See In re Classicstar Mare Lease Litig.*, 5:07-cv-353, MDL No. 1877, 2009 WL 260954, at *3–5 (E.D. Ky. Feb. 2, 2009) (finding that a defendant's production of electronically stored information was not reasonably usable under Rule 34—despite the data being in its usual form—because it required the plaintiff to "manually sort through tens of millions of rows of densely formatted financial data").

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Defendant's objection to the Special Master's Order (ECF No. 76).

**SO ORDERED.**

Dated:  April 3, 2024

_____

J. Philip Calabrese
United States District Judge
Northern District of Ohio